UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:24-cv-61567-WPD

MARKETING PARTNER SERVICES, LLC
And SITE IMPACT LLC.

    Plaintiffs,

v.

KATHRYN SCIORTINO, an individual,
and DATASYS GROUP, INC,

    Defendants.
_____/

### ORDER

THIS CAUSE is before the Court on Defendants' Amended Motion to Dismiss the First Amended Complaint and Incorporated Memorandum of Law [DE 12] filed on September 2, 2024 (the "Motion"). The Court has reviewed the Amended Complaint [DE 9], the Motion [DE 12], Plaintiff's Response in Opposition to the Motion to Dismiss filed September 19, 2024 [DE 17] and Defendant's Reply to the Response, filed September 26, 2024 [DE 19] and is otherwise fully advised on the premises.

**I.    BACKGROUND**

This action arises out of the alleged breach of a non-compete agreement. According to the Amended Complaint: Plaintiff Marketing Partner Services, LLC ("MPS") is the employer of record for individuals who work for Site Impact, LLC ("Site Impact"). [DE 9] ¶ 14. Site Impact is the outward facing brand of MPS. *Id.* ¶ 15. Ms. Kathryn Sciortino began working for the company that preceded Site Impact, BMI Ventures Inc. on about February 1, 2011 as a Business

1

Development Manager. *Id.* ¶ 22. When BMI rebranded as Site Impact in 2017, Sciortino maintained the same position and job duties: sourcing, prospecting, and closing new accounts for Site Impact. *Id.* ¶¶ 13, 23. Sciortino continued to manage and grow the same book of business. *Id.* ¶ 23. In or around June 2022, Sciortino accepted the new role of Key Account Manager for Site Impact. *Id.* ¶ 24. As Key Account Manager, Sciortino was responsible for client management. *Id.* ¶ 24. On October 13, 2017, Sciortino signed a Non-Compete agreement as a condition of assuming this new of Key Account Manager. *See Id.* ¶¶ 25, 26. The Agreement is between MPS and Sciortino, with Site Impact listed as an "Intended Third-Party Beneficiary." *Id.* ¶ 27, [DE 9-1] at p. 7. The Agreement contains a Non-Disclosure of Confidential Information provision in which Sciortino agreed that she shall not, "at any time during Employee's employment or for ten (10) years after termination of employment, directly or indirectly, communicate, divulge or disclose, for any purpose whatsoever, or use for Employee's own benefit, or the benefit of any third party, any Confidential Information." *Id.* ¶ 28 (quoting [DE 9-1]). The Agreement also contains a non-compete provision of limited duration that precludes Sciortino from performing certain activities for a competitor within a limited territory.

> **Covenant Against Competition**. Employee acknowledges that his/her services to be rendered are of a special and unusual character which have a unique value to Company and that, because the damages suffered from Employee's breach of this covenant against competition would not be readily susceptible of measurement in an action of law, there is no adequate remedy at law. The Parties agree that a violation of the provisions of this paragraph shall cause an immediate and irreparable injury to Company. In view of the unique value to Company of the services of Employee and because of the Confidential Information to be obtained by or disclosed to Employee in connection with her employment, and as a material inducement for Company to employ Employee and to pay employee compensation, Employee covenants and agrees that, during his employment and for a period of two (2) years after the termination or expiration of his employment for any reason (collectively, the "Restrictive Period"), Employee shall not, without first obtaining the Company's express written agreement, as self-employed or employee or independent contract of any professional association, corporation, or other entity, or as a shareholder or a member of any corporation or other entity, or as director,

> officer, principal, agent, owner, employer, advisor, consultant, or in any individual or representative capacity whatsoever, either for Employee's own benefit or for the benefit of any other person or entity, or otherwise engage directly or indirectly in competition with Company in the following counties in the State of Florida: Broward, Palm Beach and Miami-Dade. Additionally, such geographic area shall include the area having a radius of 50 (Fifty) miles around any office of Company established at the time or after the execution of this Agreement. The entire geographic area shall include the area having a radius of 50 (Fifty) miles around any office of Company established at the time or after execution of this Agreement. The entire geographic area described in this subparagraph is collectively defined as "Company's Market Area." The Restrictive Period shall be extended during any period Employee is in breach of this section.

[DE 9-1 at pp. 2-3]. The Agreement also contains a Covenant not to Solicit or Divert Work from Current and/or Prospective Candidates, Clients, Referral Sources, or Customers ("Prohibited Parties") in which Sciortino agreed that:

> . . . during the employment period and during the Restrictive Period, Employee shall: (1) not solicit (directly or indirectly) work from or provide services to any Prohibited Parties other than for the benefit of the Company; (2) not solicit (directly or indirectly) any Prohibited Parties to cease doing business with Company; (3) not solicit (directly or indirectly) any Prohibited Parties to commence receiving services with a legal or natural person other than Company; (4) not enter (directly or indirectly) into any business or arrangement which as the effect of diminishing Company's business; (5) not solicit (directly or indirectly) from any Prohibited Parties to provide (directly or indirectly) services of a type or kind that the Employee knows or reasonably should know that Company has performed or would have the capability to perform, even if Company does not do the work in question on a regular basis; and (6) not solicit (directly or indirectly) any Prohibited Parties for any other business purposes that would disadvantage Company in any way. "Solicit," whether directly or indirectly, shall not be limited in its definition to mean only the initiation of contact. Rather, "solicit" shall include, but not be limited to, the initiation of contact by Employee . . ., as well as Employee's . . . acceptance of an invitation of contact from Prohibited Parties. It is the parties' intent that this covenant be construed as broadly as possible to protect and preserve Company's current and prospective candidate client, referral source, and/or customer relationships during the Restrictive Period. The parties agree that the Restrictive Period shall be extended by any length of time during which the Employee is in breach of the covenant.

[DE 9] ¶ 31, [DE 9-1] at p. 7). The Agreement further requires that Sciortino disclose her obligations to any future employers:

> "Employee agrees that he shall disclose the obligations contained in this Agreement to any third party that offers to employ him or engage him as an independent contractor in anticipation that his employment by Company will cease, and to any third party that in fact does employ him or engage him as an independent contractor after his employment by Company ceases."

[DE 9] ¶ 34, [DE 9-1] at p. 10. At the time of her resignation, Sciortino was responsible for working with some of Site Impact's top-tier accounts daily and worked directly with client leadership and stakeholders, strategizing with the clients on their independent needs and working with clients on ways to grow their relationships with Site Impact. [DE 9] ¶ 36. Site Impact takes reasonable measures to protect its competitively sensitive and confidential information, including requiring all employees to sign confidentiality agreements, as well as other security measures. *Id.* ¶ 40-43.

On July 22, 2024, at 9:00 a.m. Sciortino emailed notice of her immediate resignation to her manager and the Human Resources team. *Id.* ¶ 45. Despite working for Plaintiffs for thirteen years, Sciortino did not provide any notice of her resignation. *Id.* ¶ 45. On July 23, 2024, the day after Sciortino's resignation, Plaintiffs learned that Sciortino had begun working for its direct competitor, Datasys, in a similar capacity in which she worked for Plaintiffs *Id.* ¶¶ 46, 50. Datasys offers many of the same products and services as Site Impact and competes with Site Impact for the same client base. *Id.* ¶ 47. Datasys' office is located in Boca Raton, Florida, within 50 miles of Site Impact and squarely within the geographic area prohibited by Sciortino's non-competition agreement. *Id.* ¶ 49. On information and belief, Sciortino has disclosed and/or used Site Impact's confidential trade secret information, including customer lists, pricing, and sales information, for the benefit of Datasys. *Id.* ¶ 51. Upon information and belief, Sciortino copied Plaintiffs confidentiality proprietary information and trade secrets into CircleBack, a customer management tool that MPS does not use, so that she could access such information after her resignation from employment to improperly compete with Plaintiffs in her new position with Datasys. *Id.* ¶¶ 57-64.

Upon information and belief, Sciortino has been actively soliciting Site Impact's clients in her new position at Datasys to directly compete against Site Impact, in breach of the Agreement. *Id.* ¶ 66.

On August 25, 2024, Defendants filed a Notice of Removal. On August 30, 2024, Plaintiffs' filed an Amended Complaint alleging eight (8) Counts as follows: Count I: Breach of Contract – non-Competition (against Sciortino); Count II: Breach of Contract – non-Solicitation (against Sciortino); Count III: Breach of Contract – Confidentiality (against Sciortino); Count IV: Misappropriation of Trade Secrets in Violation of the Florida Uniform Trade Secrets Act ("FUTSA") (against all Defendants); Count V: Misappropriation and Misuse of Trade Secrets in violation of the Defend Trade Secrets Act ("DTSA") (against all Defendants); Count VI: Common Law Unfair Competition (against all Defendants); Count VII: Tortious Interference with Contract (against Datasys); Count VIII: Violation of the Florida Computer Abuse and Data Recovery Act (against all Defendants).

## II.   LEGAL STANDARD

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be

read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334–36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

The Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

### III.   DISCUSSION

In its Motion to Dismiss, Defendant argues as follows: (1) the Court should dismiss Site Impact's claims under Counts I, II, and III because Florida Law precludes Site Impact's enforcement of the Agreement's restrictive covenants; (2) the Court should similarly dismiss Site Impact's claim in Count VII against Datasys for tortious interference with a contract; (3) the Court should dismiss Counts I, II, and III as to Plaintiff MPS for failure to state a claim because MPS fails to allege that Defendant Sciortino used any of its own confidential information; (4) the Court should similarly dismiss Counts IV (FUTSA) and Count V (DTSA) as to Plaintiff MPS because Plaintiffs do not allege that the confidential information belongs to MPS;  (5) The Court should dismiss Count VI because Plaintiffs fail to state any of the elements of a common law unfair competition claim; (6) The Court should dismiss Counts VI (common law unfair competition) and VIII (Computer Abuse and Recovery Act) because they are preempted by the Florida Uniform Trade Secrets Act. The Court addresses each argument in turn.

1. **Whether Counts I, II, And III Should Be Dismissed Because Florida Law Precludes Site Impact's Enforcement of The Agreement's Restrictive Covenants**

Under Florida law, "[t]he court shall not refuse enforcement of a restrictive covenant on the ground that the person seeking enforcement is a third-party beneficiary of such contract. . . provided. . . the restrictive covenant expressly identified the person as a third-party beneficiary of the contract and expressly stated that the restrictive covenant was intended for the benefit of such person." Fla. Stat. § 542.335(1)(f). Florida law recognizes a party as an intended third-party beneficiary of a contract when "the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." *Caretta Trucking v. Cheoy Lee Shipyards*, 647 So. 2d 1028, 1031 (Fla. 4th DCA 1995).

Defendants concede that Site Impact is expressly listed as a third-party beneficiary in the noncompete agreement [DE 9-1] (the "Agreement"). However, they argue that because the "restrictive covenants in the [Agreement] do not expressly state that **they** are for the benefit of [Site Impact], as required by the statute," it "cannot be enforced by [Site Impact]." (emphasis added) (quoting *NuVasive, Inc. v. Absolute Med., LLC*, 2021 WL 3008153, at *13 (M.D. Fla. May 4, 2021)). Basically, Defendants argue that because the third-party beneficiary clause does not expressly refer to the restrictive covenant clause, that Site Impact was not an intended third-party beneficiary as to that clause.

The Court disagrees. In its last paragraph, the Agreement expressly states:

> 25. **Intended Third Party Beneficiaries.** In Box Specialists L.L.C., and Site Impact, L.L.C., (collectively, the "Third-Party Beneficiaries") are third-party beneficiaries of this Agreement. All rights and remedies are intended for the benefit of the Third-Party Beneficiaries and without any limitation on the Company's rights and remedies.

[DE 9-1] at p. 7. The inclusive "all rights and remedies" language suggests that any enforcement action under this Agreement was intended to benefit Site Impact as well as MPS. Defendant does not point to any cases that suggest that the intended beneficiary clause need be clearer than this. Defendant points only to two cases in which a third party could not enforce a non-compete agreement. In both cases, the third party was not included in the Agreement *at all*. *See e.g.*, *Nuvasive, Inc. v. Absolute Medical, LLC*, 2021 WL 3008153 (M.D. Fla. May 4, 2021) (finding that a restrictive covenant agreement could not be enforced against a party that was not listed as a third-party beneficiary); *see also Collier HMA Physician Mngmt., LLC v. Menichello,* 223 So. 3d 334 (Fla. 2d DCA 2017) (refusing to enforce a restrictive covenant where the plaintiff-company was not considered a subsidiary and the agreement explicitly stated that there are no third-party beneficiaries). Accordingly, the Defendant's motion to dismiss Counts I, II, or III as to Site Impact is **DENIED**.

2. **Whether The Court Should Similarly Dismiss Site Impact's Claim in Count VII Against Datasys for Tortious Interference with Contract**

Defendant argues that Site Impact's tortious interference claim against Datasys in Count VII should similarly be dismissed because Site Impact "has no right to enforce the Agreement's restrictive covenants. Yet the only contractual rights Site Impact Alleges Datasys interfered with are those restrictive covenants."

To plead a tortious interference with a contract under Florida Law, a Plaintiff must allege (1) the existence of a contract, (2) knowledge of the contract on the part of the defendant; (3) an intentional and unjustified procurement of the contract's breach; and (4) damage to the plaintiff as a result of the interference. *See e.g. Capital Com. Fin. Corp. v. Hitachi Cap. Am. Cor*., 519 F. Supp. 3d 1129, 1134 (S.D. Fla. 2021) (citing action *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla.

8

Dist. Ct. App. 1985)). Accordingly, to be a proper plaintiff in a claim for tortious interference with contract, Plaintiff Site Impact must allege that it was "damage[d]" as a result of the interference.

Based on the pleadings taken as true, and drawing all inferences in favor of the Plaintiff, Plaintiff has sufficiently alleged that Site Impact was damaged because of Datasys's alleged interference with the Agreement. Plaintiff alleges that "*Site Impact* has spent considerable time, effort, and expense tracking and compiling such information, which is not publicly available. Additionally, *Site Impact* has spent significant effort protecting these trade secrets via its IT Department and security measures. The trade secrets misappropriated by Defendants have significant economic value and provide *Site Impact* a competitive advantage in its narrow market." [DE 9] ¶¶ 123-124.

The Court concludes from these allegations that confidential information at issue in the Agreement had significant value to Site Impact, and that Site Impact could be damaged if a third party interfered with the agreement restricting the dissemination of that confidential information. Here, Plaintiffs allege that Datasys interfered with the Agreement by hiring Defendant to share confidential information. Plaintiffs allege, "Upon information and belief, Sciortino took Plaintiffs' confidential proprietary information and trade secrets, whether through copying such information into CircleBack or through other means, with the support of and/or at the direction of Datasys." [DE 9] ¶ 63. Further, "upon information and belief, Datasys was able to access and utilized Plaintiffs' confidential and trade secrets information as a result of Sciortino's wrongful taking of such information from Plaintiffs." [DE 9] ¶ 64. At this stage, the Court finds that such allegations are sufficient to show that Plaintiffs—both MPS and Site Impact—could show upon the opportunity for discovery that they were damaged as a result of Datasys' actions. Accordingly, Defendant's motion to dismiss **COUNT VII** as to Site Impact is hereby **DENIED**.

3. **Whether MPS Fails to Plead Counts I, II, III, IV and V, because MPS Did Not Own the Trade Secrets**

Defendant argues that the breach of contract claims, Counts I, II, and III, should be dismissed because MPS fails to allege that Defendant used any of MPS's own trade secrets or confidential information. Defendant makes essentially the same argument for Count IV (Misappropriation and Misuse of Trade Secrets under the FUTSA), and Count V (Misappropriation and Misuse of Trade Secrets under the DTSA). Defendant does not argue that Site Impact does not state a claim as to the above counts under the claims' substantive elements, only that MPS does not.

   a. *Whether The Court Should Dismiss the Breach of Contract Claims Counts I and II as to Plaintiff MPS because MPS Does Not Allege That It Owns the Confidential Information at Issue*

To state a claim for breach of contract in Florida, a plaintiff must allege "(1) a valid contract existed; (2) a material breach of the contract; and (3) damages*." Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. Dist. Ct. App. 2017) (citations omitted).

As discussed above, MPS is a party to the contract that prohibits Plaintiff from disclosing confidential information. Counts I and II turn on the non-competition and non-solicitation elements of the agreement. Defendant's only argument to dismiss is that MPS did not own the confidential information at issue. Because the non-competition and non-solicitation counts have no bearing on whether Defendant shared confidential information with Datasys in violation of the confidentiality provision of the Agreement, and because Defendant does not argue that any of the elements of a breach of contract claim are not plead, Defendant's Motion to Dismiss as to **COUNTS I** and **COUNT II** on this basis as to MPS is hereby **DENIED**.

  b. *Whether The Court Should Dismiss the Breach of Contract Claims Count III as to Plaintiff MPS because MPS Does Not Allege That it Owns the Confidential Information at Issue*

As to Count III, breach of the confidentiality portion of the Agreement, Defendant points to no requirement—and the Court finds none—to suggest that an employer party an agreement restricting the spread of confidential information *must itself* be the "owner" of the confidential material at issue. Plaintiff MPS has alleged that it was party to a valid contract with Defendant Sciortino that restricted Defendant from disclosing confidential information to third parties. Plaintiff MPS alleges that Defendant in fact disclosed that confidential information to third parties. Because Defendant does not argue that any actual element of a breach of contract claim was not stated, Defendant's Motion to Dismiss as to **COUNT III** on this basis as to MPS is hereby **DENIED**.

  c. *Whether The Court Should Dismiss Count IV—Florida Uniform Trade Secrets Act (FUTSA) Because Plaintiff MPS Does Not Allege That The Confidential Information Belonged To MPS*

Florida law states that a party misappropriates a trade secret when it acquires a "trade secret *of another* by a person who knows or has reason to know that the trade secret was acquired by improper means." Fla. Stat. § 688.02(2) (emphasis added). The Eleventh Circuit explained that to state a claim under the Florida Uniform Trade Secrets Act, a plaintiff "must demonstrate that (1) it *possessed* a trade secret and (2) the secret was misappropriated." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1310-11 (11th Cir. 2020) (emphasis added).

Plaintiffs fail to allege that *MPS* possessed any trade secrets. Instead, Plaintiffs allege in Count IV: "Site Impact's customer list, customer information, and sales data constitute protectable trade secrets pursuant to Fla. Stat. § 688.002." [DE 9] ¶ 106. Further, "Site Impact has spent significant time and money developing such Confidential Information and Trade Secrets" *Id.* ¶

11

107. Plaintiff does not allege that MPS—the HR company employing Site Impact employees—had anything to do with the development, retention, protection, or use of the trade secrets. Accordingly, Defendant's Motion to Dismiss **COUNT IV** is hereby **GRANTED** as to MPS only.

> d. *Whether The Court Should Dismiss Count V (DTSA) Because Plaintiff MPS Does Not Allege That The Confidential Information Belongs To MPS*

To state a claim under the Defend Trade Secrets Act, a plaintiff must plausibly allege that it "(i) possessed information of independent economic value that was (a) lawfully owned by the plaintiff and (b) for which the plaintiff took reasonable measures to keep secret, and (ii) the defendant used and/or disclosed that information, despite (iii) a duty to maintain its secrecy." *Verbena Products, LLC v. Del Toro*, 2022 WL 910666, at *2 (S.D. Fla. March 3, 2022).

Defendant correctly argues that because MPS is not the lawful owner of any trade secret, that it does not sufficiently allege the elements of the DTSA and therefore cannot state a claim for misappropriation. The DTSA has an explicit requirement that the plaintiff "lawfully owned" the appropriated trade secret. MPS does not make any allegation that it owned the trade secret, only that it employed the individuals who worked for the company (Site Impact) that itself owned the trade secret. Accordingly, this Count must be dismissed as to Plaintiff MPS only. While Plaintiffs allege in a conclusory fashion that "Plaintiffs own valuable Confidential Information and Trade Secrets within the meaning of the Defend Trade Secrets Act," Plaintiffs allege *facts* only as to Site Impact, stating: "Site Impact owns its proprietary OMS and all the data therein, which Sciortino accessed for non-work purposes while she was on leave from work using PTO" and "Sciortino improperly accessed and downloaded Site Impact's highly confidential trade secrets, including client activity and spending reports for Site Impact's clients." [DE 9] ¶¶ 121-122; *see also id* ¶¶ 123-125.

Plaintiff argues the Eleventh Circuit case *Highland Consulting* is instructive. There, the Eleventh Circuit found that a company can show that it owned a trade secret where it served as the publicly facing entity name that was attached to hundreds of documents of trade secrets. *See The Highland Consulting Grp., Inc. v. Minhares*, 74 F.4th 1352, 1355 (11th Cir. 2023). But this case is inopposite. Here, Plaintiff alleges that *Site Impact* is the publicly facing entity, not MPS. So *Highland Consulting* cannot support a finding that MPS properly possessed any trade secrets. Accordingly, Defendant's Motion to Dismiss **COUNT V** is hereby **GRANTED** as to MPS only.

4. **Whether The Court Should Dismiss Count VI Because Plaintiffs Fail to State Any of The Elements of a Common Law Unfair Competition Claim**

Defendants next argue that the Court should dismiss Plaintiff's common law unfair competition claim. Defendants argue that the elements for common law unfair competition are: "(1) the plaintiff is the prior user of the trade name or service mark, (2) the trade name or service mark is arbitrary or suggestive or has acquired secondary meaning, (3) the defendant is using a confusingly similar trade name or service mark to indicate or identify similar services rendered (or similar goods marketed) by it in competition with plaintiff in the same trade area in which plaintiff has already established its trade name or service mark, and (4) as a result of the defendant's action or threatened action, consumer confusion as to the source or sponsorship of the defendant's goods or services is likely." *PetMed Express, Inc. v. MedPets.Com, Inc*., 336 F. Supp. 2d 1213, 1219 (S.D. Fla. 2004). Defendants argue that because Plaintiffs allege none of these elements, they fail to state a claim.

"Unfair competition is a creature of common law and serves as an umbrella for all statutory and non-statutory causes of action arising out of conduct that is contrary to honest practice in industrial and commercial matters." *See TEC Serv, LLC v. Crabb,* No. 11-62040-CIV, 2013 WL 12177335, at *8 (S.D. Fla. June 11, 2013) *(quoting AstroTel, Inc. v. Verizon Fla., LLC.,* No. 8:11–

cv–2224–T–33TBM, 2012 WL 1581596, at *8 (M.D. Fla. May 4, 2012). Accordingly, there is no single set of "elements that apply uniformly to all claims of unfair competition[.]" *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.,* 432 F.Supp.2d 1319, 1353 (S.D.Fla.2006), aff'd, 294 F. App'x 501 (11th Cir. 2008). Courts have therefore applied elements from other established claims to unfair competition claims, where appropriate, on a case-by-case basis. *See, e.g., Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193 n. 4 (11th Cir. 2001).

The "overwhelming majority" of courts that attempt to enumerate the elements of an unfair competition claim "do so in contexts where the underlying acts are trademark or tradedress infringement," *Alphamed Pharms. Corp.*, 432 F. Supp. 2d at 1353. But the Eleventh Circuit has recognized that an unfair competition claim may arise where the underlying claim rests on tortious interference with a business relationship. *See Mfg. Rsch. Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982) ("included within unfair competition is the tort of interference with business relations."). Plaintiffs accordingly argue that this Court should adopt the elements to the unfair competition claim that derive from jury instructions in a case where Plaintiffs brought claims for unfair competition and tortious interference with a business relationship. Plaintiff proposes the following elements: "First, that [the defendant] committed an act that interfered with the plaintiffs [sic] ability to conduct its business. Second that the act was intentional. Third, that the intentional act either violated a statute or was an independent tort, and, fourth that the plaintiff suffered damages as a result of [the defendant's] unlawful conduct." [DE 17] (quoting *Alphamed Pharm. Corp. v. Arriva Pharm, Inc*., 432 F. Supp. 2d at 1354)).

The Court disagrees. In the present case, Plaintiffs do not plead a tortious interference with a business relationship claim. Instead, they plead tortious interference with a *contract* claim. These are separate and distinct causes of action under Florida law. The Court declines to adopt elements

14

to an unfair competition claim based on the elements of a tortious interference with a business relationship claim, where no such claim exists in this case. This Court has found no case in this Circuit, and Plaintiffs provide none, that enumerate the elements of an unfair competition claim that is based on a tortious interference with a *contract* claim. The Court declines to invent elements to an unfair competition claim that is based on the elements of tortious interference with a contract claim. Accordingly, Defendants' motion to dismiss as to Plaintiffs' common law unfair competition claim—**COUNT VI**—is hereby **GRANTED**.

5. **Whether the Court should Dismiss Count VI (Unfair Competition) and Count VIII (Computer Abuse and Data Recovery Act) Because it is Preempted By The Florida Uniform Trade Secrets Act.**

"By its own language, the [FUTSA] displaces all 'conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret.'" *Supercase Enter. Co. v. Marware, Inc.*, No. 14-61158, 2015 WL 11622424, at *8 (S.D. Fla. Oct. 26, 2015) (citing Fla. Stat. § 688.008(1)). In order to determine whether a claim is preempted by FUTSA a court must determine "whether allegations of trade secret misappropriation alone comprise the underlying wrong" or whether the claims are factually distinct. *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335 (S.D. Fla. 2002); *accord Freedom Mortg. Corp. v. Strong Home Mortg., LLC*, No. 20-81721-CV, 2020 WL 8642053, at *4 (S.D. Fla. Dec. 15, 2020).

Defendant first argues that the FUTSA preempts the common law competition claim. However, the Court declines to address this argument as it has already dismissed this Count.

Defendant next argues the FUTSA preempts Plaintiffs' claims under Florida's Computer Abuse and Data Recovery Act. The Court accordingly must consider whether Plaintiffs allegations under the Computer Abuse and Data Recovery Act are distinguishable from those claims under the FUTSA. The elements of a CADRA claim are: (1) a person who knowingly and with the intent to

cause harm or loss; (2) obtains information from a protected computer without authorization; and as a result, causes harm or loss; (4) is liable to the extent provided for in Fla. Stat. § 688.804 in a civil action to: (a) the owner, operator, or lessee of the protected computer, or (b) the owner of the information stored in the protected computer who uses the information in connection with the operation of a business. Fla. Stat. § 668.803.

In this Count, Plaintiffs allege in essence, "Sciortino unlawfully accessed and obtained Plaintiffs' proprietary and confidential information from its "protected computers," and then, upon information and belief, uploaded that information to one or more services that would allow Sciortino to continue accessing information obtained from Plaintiffs' "protected computers" following her separation from Plaintiffs' employ." [DE 9] ¶ 151.

After comparing the claims, the Court finds that Plaintiffs' Computer Abuse and Data Recovery Act claim is based on the exact same conduct as Plaintiffs' FUSTA claim. Both are based on Sciortino's use of confidential and proprietary information. Plaintiffs argue that the claims are distinct because its CADRA claims includes obtaining confidential information, and not just trade secrets. But this Court has previously found, and still maintains, that this is a distinction without a difference when it comes to FUSTA preemption. *See Jouria v. CE Res., Inc.*, No. 0:15-CV-61165-WPD, 2017 WL 3868422, at *4 (S.D. Fla. July 17, 2017) (Dimitrouleas, J.) (finding that the FUSTA preempted plaintiffs intentional interference claim because plaintiff's "trade secret claim is based on Elite's use of 'confidential and proprietary information' subject to the NDA, and that is indistinguishable from the intentional interference claim.").

Plaintiffs argue that a preemption determination would be premature given that the Court has not yet determined that a trade secret exists. *See Healthcare Appraisers, Inc. v. Healthcare FMV Advisors*, LLC, No. 10-80293-CIV, 2011 WL 4591960, at *10 (S.D. Fla. Sept. 30,

16

2011) (finding a preemption argument premature because "[i]f it is determined at a later time that there are no trade secrets, th[e]n it would follow that the unjust enrichment claim would not be based on a misappropriation of trade secrets and should not be displaced. Therefore, this argument is more properly asserted at summary judgment."). This Court joins the majority of jurisdictions considering this issue and rejects Plaintiffs argument. *Am. Registry, LLC v. Hanaw,* No. 2:13-CV-352-FTM-29CM, 2014 WL 12606501, at *6 (M.D. Fla. July 16, 2014) (collecting cases and stating the majority position that "the FUTSA preempts all non-contract claims based on the misappropriation of confidential and/or commercially valuable information even if the information does not constitute a trade secret under the FUTSA."). Accordingly, Defendant's Motion to Dismiss **COUNT VIII** is hereby **GRANTED**.

Accordingly, it is **ORDERED** and **ADJUDGED** that Defendant's Amended Motion to Dismiss [DE 12] is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

1. **COUNT IV (FUTSA)** is hereby **DISMISSED WITHOUT PREJUDICE** as to MPS only.
2. **COUNT V (DTSA)** is hereby **DISMISSED WITHOUT PREJUDCE** as to MPS only.
3. **COUNT VII (Common Law Unfair Competition)** is hereby **DISMISSED WITHOUT PREJUDICE** in its entirety.
4. **COUNT VIII (CADRA)** is hereby **DISMISSED WITHOUT PREJUDICE** as preempted in its entirety.
5. All remaining claims may proceed.
6. On or before **December 3, 2024**, Plaintiff shall either file (1) a Notice stating that Plaintiff intends to proceed on the Amended Complaint only as to the remaining counts or (2) file a Second Amended Complaint attempting to replead the dismissed counts.

7. In the event Plaintiff files a Notice stating that Plaintiff intends to proceed on the Amended Complaint only as to the remaining counts, Defendants will have fourteen (14) days from the date of the filing of that Notice to file their Answer(s).

**DONE** and **ORDERED** in Chambers in Fort Lauderdale, Florida on this 20th day of November, 2024.

*[signature]*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:

Counsel of record